UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

"IN ADMIRALTY"

| | |
|---|---|
| ROBERT SENESCHAL,<br><br>    Plaintiff,<br><br>v.<br><br>EAST BAY MARINE SERVICES, LLC d/b/a INTER-BAY MOORINGS, and JACK R. CRUEY d/b/a MASTER MARINE MOBILE,<br><br>    Defendants. | Case No.: |

## COMPLAINT

Plaintiff, Robert Seneschal, by and through the undersigned counsel, hereby sues Defendants, East Bay Marine Services, LLC d/b/a Inter-Bay Moorings, and Jack R. Cruey d/b/a Master Marine Mobile, and states as follows:

## JURISDICTION AND VENUE

1. This action is brought under the admiralty and maritime jurisdiction of the Court pursuant to Federal Rule of Civil Procedure 9(h) and 28 U.S.C. § 1333.

2. Plaintiff, Robert Seneschal ("Plaintiff"), is a Florida resident, located at 16314 Bridgecrossing Drive, Lithia, Florida 33547.

3. Defendant, East Bay Marine Services, LLC d/b/a Inter-Bay Moorings ("IBM"), is a Florida limited liability company, located at 6210 Ohio Avenue, Gibsonton, Florida 33534.

4. Defendant, Jack R. Cruey d/b/a Master Marine Mobile ("MMM"), is a Florida resident, located at 112 Herrick Street, Auburndale, Florida 33823.

5. The substantive law to be applied in this action is the General Maritime Law of the United States of America.

6. The causes of action alleged herein accrued in Hillsborough County, Florida, which is within the jurisdiction of the United States District Court for the Middle District of Florida.

7. All conditions precedent to filing this action have been performed or waived.

## FACTUAL ALLEGATIONS

8. Plaintiff owns *Remedy*, a 1991 42' Sea Ray Motor Yacht ("Vessel").

9. On or about September 24, 2021, Plaintiff entered into a written maritime contract for vessel storage with IBM.

10. Under the storage contract, IBM provided dockage and utilities for the Vessel in exchange for a monthly fee of $579.00.

11. The storage contract required that all outside contractors working on the Vessel provide proof of insurance and license before performing any work at the marina.

12. The storage contract imposed a fifteen percent (15%) surcharge for all work performed by outside contractors at the marina.

13. The storage contract imposed a fifteen percent (15%) surcharge on all parts installed by outside contractors not purchased from the marina.

14. In July 2023, Plaintiff requested a quote from IBM to inspect the Vessel's engines for overheating issues.

15. IBM advised Plaintiff that it did not perform engine inspections.

16. IBM recommended that Plaintiff hire MMM to perform the work at the marina.

17. IBM represented that MMM was licensed, insured, and otherwise authorized to work at the marina.

18. In reliance upon these representations, Plaintiff hired MMM to inspect the engines.

19. On or about July 5, 2023, Plaintiff entered into an oral contract with MMM to inspect the engines.

20. IBM permitted MMM to conduct the inspection at the marina.

21. Following the engine inspection, MMM advised Plaintiff that both engines needed to be rebuilt or replaced.

22. Plaintiff purchased two rebuilt engines and delivered them to MMM.

23. MMM agreed to remove the old engines and install the new engines for $13,500.00.

24. Plaintiff paid $3,000.00 and agreed to transfer the old engines to MMM as payment of the remaining balance.

25. MMM accepted these terms.

26. On or about November 3, 2023, MMM began installation of the new engines.

27. IBM permitted MMM to perform the installation at the marina.

28. In December 2023, MMM advised Plaintiff that the installation was complete and that the Vessel was ready for operation.

29. On or about December 23, 2023, Plaintiff took the Vessel on a sea trial.

30. During the sea trial, the engines seized and could not be restarted.

31. As a result, the Vessel needed to be towed back to IBM.

32. Between December 2023 and March 2024, MMM attempted to repair the engines.

33. Despite multiple attempts, MMM was unable to repair the engines.

34. During this time, the Vessel remained at IBM accruing storage charges.

35. On or about August 1, 2024, Plaintiff demanded that MMM submit a claim to its insurance company for the mechanical failure.

36. Plaintiff then discovered that MMM was neither licensed nor insured at any time relevant to the work performed on the Vessel.

37. Plaintiff first learned of MMM's lack of insurance and licensing in August 2024.

38. Plaintiff had relied on IBM's previous representation that MMM was licensed, insured, and otherwise authorized to work at the marina.

39. As a result of the misrepresentations and failed installation, Plaintiff has incurred more than $50,000.00 in damages.

40. Plaintiff has further incurred significant storage charges while the Vessel remained inoperable at IBM.

## COUNT I
## NEGLIGENCE
*(Plaintiff vs. IBM)*

41. Plaintiff re-alleges and incorporates by reference Paragraphs 1-40.

42. At all times material hereto, IBM owned, controlled, and operated a marina providing dockage, utilities and related marine services to vessels, including Plaintiff's vessel.

43. IBM voluntarily undertook to restrict access to the marina to outside contractors who were licensed and insured.

44. By undertaking this responsibility, IBM assumed a duty to exercise reasonable care in evaluating and approving outside contractors for work at the marina.

45. IBM breached this duty by failing to reasonably verify that MMM was licensed and insured before recommending MMM to its customers and allowing MMM to perform work at the marina.

46. As a direct and proximate result of IBM's negligence, Plaintiff suffered damages in excess of $50,000.00, including costs of mechanical repairs, storage charges, depreciation of value, and loss of use of the Vessel.

**WHEREFORE,** Plaintiff, Robert Seneschal, demands judgment against Defendant, East Bay Marine Services, LLC d/b/a Inter-Bay Moorings, for damages, including interest and costs, and for such other and further relief that the Court deems just and proper.

## COUNT II
## NEGLIGENT MISREPRESENTATION
*(Plaintiff v. IBM)*

47. Plaintiff realleges and incorporates by reference Paragraphs 1-40.

48. At all times material hereto, IBM owned, controlled, and operated a marina providing dockage, utilities and related marine services to vessels, including Plaintiff's vessel.

49. IBM represented to Plaintiff that MMM was licensed, insured, and otherwise authorized to perform work at the marina.

50. IBM made these representations to induce Plaintiff to hire MMM to perform work on the Vessel at the marina.

51. At the time IBM made these representations MMM was not licensed or insured.

52. IBM knew or should have known that its representations regarding MMM's insurance and license status were false.

53. Plaintiff reasonably relied on IBM's representations when hiring MMM to perform work on the Vessel.

54. As a direct and proximate result of IBM's negligent misrepresentations, Plaintiff suffered damages in excess of $50,000.00, including costs of mechanical repairs, storage charges, depreciation of value, and loss of use of the Vessel.

**WHEREFORE,** Plaintiff, Robert Seneschal, demands judgment against Defendant, East Bay Marine Services, LLC d/b/a Inter-Bay Moorings, for damages, including interest and costs, and for such other and further relief that the Court deems just and proper.

## COUNT III
## BREACH OF MARITIME CONTRACT
*(Plaintiff v. MMM)*

55.   Plaintiff re-alleges and incorporates by reference Paragraphs 1-40.

56.   On or about July 5, 2023, Plaintiff entered into an oral maritime contract with MMM to inspect, remove and replace two engines on the vessel.

57.   Plaintiff performed as required by the contract.

58.   MMM materially breached the contract by failing to properly inspect the engines.

59.   MMM materially breached the contract by failing to properly remove the engines.

60.   MMM materially breached the contract by failing to properly reinstall the engines.

61.   MMM materially breached the contract by failing to deliver the Vessel in an operable condition following completion of the engine installation.

62.   MMM materially breached the contract by failing to remedy the defective work despite multiple attempts.

63.   MMM materially breached the contract by charging Plaintiff for work never performed or preformed in an improper manner.

64.   MMM materially breached the contract by retaining equipment and tools belonging to Plaintiff without Plaintiff's permission.

65.   As a direct and proximate result of MMM's breach of contract, Plaintiff suffered damages in excess of $50,000.00, including costs of mechanical repairs, storage charges, depreciation of value, and loss of use of the Vessel.

**WHEREFORE,** Plaintiff, Robert Seneschal, demands judgment against Defendant, Jack R. Cruey d/b/a Master Marine Mobile, for damages, including interest and costs, and for such other and further relief that the Court deems just and proper.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF WORKMANLIKE PERFORMANCE
*(Plaintiff v. MMM)*

66. Plaintiff realleges and incorporates by reference Paragraphs 1-40.

67. On or about July 5, 2023, Plaintiff entered into an oral maritime contract with MMM to inspect, remove and replace two engines on the vessel.

68. Under the General Maritime Law of the United States of America, MMM owed Plaintiff an implied warranty of workmanlike performance in connection with those services.

69. The implied warranty of workmanlike performance required MMM to perform the contracted services in a diligent, competent, and workmanlike manner.

70. MMM breached the implied warranty of workmanlike performance by failing to properly inspect the engines.

71. MMM breached the implied warranty of workmanlike performance by failing to properly remove the engines.

72. MMM breached the implied warranty of workmanlike performance by failing to properly reinstall the engines.

73. MMM breached the implied warranty of workmanlike performance by failing to deliver the Vessel in an operable condition following completion of the engine installation.

74. MMM breached the implied warranty of workmanlike performance by failing to correct the defective work despite multiple attempts.

75. MMM breached the implied warranty of workmanlike performance by charging Plaintiff for work never performed or preformed in an improper manner.

76. MMM breached the implied warranty of workmanlike performance by retaining equipment and tools belonging to Plaintiff without Plaintiff's permission.

77. As a direct and proximate result of MMM's breaches of the implied warranty of workmanlike performance, Plaintiff suffered damages in excess of $50,000.00, including costs of mechanical repairs, storage charges, depreciation of value, and loss of use of the Vessel.

**WHEREFORE,** Plaintiff, Robert Seneschal, demands judgment against Defendant, Jack R. Cruey d/b/a Master Marine Mobile, for damages, including interest and costs, and for such other and further relief that the Court deems just and proper.

Dated: August 25, 2025         Respectfully submitted,

**FIORILLI LAW GROUP, P.A**
*Attorneys for Plaintiff*
3001 West State Road 84, Third Floor
Fort Lauderdale, Florida 33312
Office: (954) 797-7719
Direct: (561) 727-9337
E-mail: justin@fiorillilaw.com
E-mail: isaiah@fiorillilaw.com

*/s/ Justin S. Fiorilli*
**JUSTIN S. FIORILLI, ESQ.**
Florida Bar No. 111481